UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DANIEL BOWER
    Plaintiff,

vs.

METROPARKS OF BUTLER
COUNTY, et al.
    Defendants.

Case No. 1:18-cv-00791

Dlott, J.
Litkovitz, M.J.

**AMENDED REPORT AND
RECOMMENDATION[1]**

      Plaintiff Daniel Bower brings this action for violations of his federal and state rights

against defendants MetroParks of Butler County ("Metroparks"), the Metroparks of Butler

County Board of Park Commissioners ("Board"), and Jonathan Granville in his official and

individual capacities. (*Id.*, ¶ 2). This matter is before the Court on motions to dismiss the

complaint under Fed. R. Civ. P. 12(b)(6) filed by the Board (Doc. 9) and Granville (Doc. 10),

plaintiff's memoranda in response to the motions (Docs. 15, 16), and defendants' reply

memoranda (Docs. 21, 22).

**I.   Allegations of the complaint**

      Plaintiff makes the following allegations in the complaint (Doc. 1): Plaintiff is a citizen

of the State of Ohio. (*Id.*, ¶ 10). Plaintiff began his employment with defendants as Chief of

Public Safety & Law Enforcement in June 2013. (*Id.*, ¶¶ 12, 14). The Board, a political

subdivision of the State of Ohio, is a public entity comprised of public appointees. (*Id.*, ¶ 3).

The Board is an employer under applicable federal and Ohio law. (*Id.*). Granville is the

Executive Director of Metroparks and plaintiff's direct supervisor. (*Id.*, ¶ 12). At all relevant

---

[1] This Amended Report and Recommendation reflects a single correction on page 21, paragraph 3 to recommend
that Granville's, and not plaintiff's, motion to dismiss (Doc. 10) plaintiff's claims against Granville under the ADA
and the FMLA and plaintiff's claim against Granville in his official capacity under Ohio Rev. Code § 4112.02 be
granted.

times, the Board "employed, controlled, or had the right to control" Granville. (*Id.*, ¶ 4). Granville acted at all times relevant to the complaint in his official capacity as an agent for Metroparks and the Board, and/or in his individual capacity, and in the course of his employment. (*Id.*, ¶ 12).

At all relevant times, plaintiff has "been disabled by anxiety, depression and PTSD (post-traumatic stress disorder)" related to his military and police service. (*Id.*, ¶ 10). His disabilities significantly impacted his life activities, including neurological functioning, thinking, sleeping, and socialization; however, plaintiff remained qualified for his employment position with defendants at all relevant times. (*Id.*, ¶¶ 11, 13). Defendants were aware of plaintiff's disabilities because he told Granville and the Board about his disabilities and he requested leave and other accommodations, including "changed supervisory methods," for his disabilities. (*Id.*, ¶ 14). Plaintiff also qualified for leave under the Family and Medical Leave Act (FMLA), but defendants refused to offer plaintiff FMLA leave. (*Id.*, ¶¶ 15, 16).

On or about June 6, 2016, Granville rated plaintiff as "exceptional/highly effective" and recommended him for a merit-based pay increase. (*Id.*, ¶ 16). Plaintiff received "excellent" performance evaluations until August 2016, when he informed Granville that "he was disabled and of the nature of his disabilities." (*Id.*, ¶ 17). Granville then "threatened Plaintiff's job" and refused to accommodate his disabilities or discuss doing so. (*Id.*, ¶¶ 19, 21). Granville admittedly managed plaintiff more closely after learning of his disabilities and "became openly hostile to plaintiff." (*Id.*, ¶ 20). Granville set higher standards for plaintiff than for others and set "unreasonable and arbitrary deadlines." (*Id.*).

Plaintiff received no prior written warning or discipline before receiving a negative performance review, which he claims was a "sham performance review to justify recommending

that the Board terminate Plaintiff or force him to resign." (*Id*., ¶¶ 23, 24). Granville told

plaintiff that he would be terminated during the review when plaintiff refused to resign. (*Id*., ¶

24). Plaintiff "publicly protested Granville's recommendation to the Board at a Board meeting"

verbally and in writing, telling the Board that Granville had discriminated against him based on

his disabilities and refused to accommodate his disabilities. (*Id*., ¶¶ 25, 26). "On information

and belief, the Board terminated plaintiff without investigating his complaint." (*Id*., ¶ 27).

Plaintiff was replaced by a non-disabled person who did not take FMLA-protected leave. (*Id*., ¶

28).

Based on these allegations, plaintiff brings a claim for disability discrimination and

retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. (*Id*., ¶¶

32-39, Count I) and under Ohio Rev. Code Chapter 4112 (*Id*., ¶¶ 40-47, Count II). Plaintiff

alleges that he was fully qualified for his position at all relevant times, he requested reasonable

accommodations for his disabilities, and defendants refused to engage in the interactive process

and denied his requests. Plaintiff claims that defendants discriminated and retaliated against him

because he is disabled and they perceived him as disabled; because he requested

accommodations for his disability; and/or because he complained they discriminated against him

based on his disability. Plaintiff alleges that defendants treated him less favorably than non-

disabled people, refused to accommodate his disabilities, and terminated his employment.

Plaintiff also brings a claim for interference and retaliation under the FMLA, 29 U.S.C. §

2615, *et seq*. (*Id*., ¶¶ 48-54, Count III). Plaintiff alleges he had a serious health condition that

qualified him for FMLA leave; he notified defendants of his need for medical leave and took

medical leave; and defendants interfered with his rights under the FMLA and retaliated against

him. Plaintiff alleges that defendants denied him FMLA leave, treated him less favorably than

employees who did not exercise their rights under the FMLA, and terminated him in violation of the FMLA.

Finally, plaintiff brings a claim for violation of his rights under 42 U.S.C. § 1983. (*Id.*, ¶¶ 55-60, Count IV). Plaintiff alleges that defendant Granville, acting under color of state law, violated his rights under the Fourteenth Amendment to the United States Constitution to be free from disability discrimination and retaliation. Plaintiff claims that Granville's allegedly wrongful conduct "was the direct result of official practices and customs established by Defendants MetroParks and the Board that allowed discriminatory treatment against persons with disabilities to go unchallenged, uninvestigated, and unaddressed." (*Id.*, ¶ 57).

Plaintiff claims that as to each violation of his constitutional and statutory rights, defendants' conduct was intentional, willful, wanton, malicious and in reckless disregard of plaintiff's legal rights. (*Id.*, ¶¶ 38, 46, 53, 58).

## II.  Rule 12(b)(6) standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting

*Twombly,* 550 U.S. at 555, 570).  A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  Although the court must accept well-pleaded factual allegations as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

### III.  The Board's motion to dismiss (Doc. 9)

The Board moves to dismiss plaintiff's claims under the ADA, the FMLA and Ohio Rev. Code § 4112.02 on the ground plaintiff has not pled sufficient facts to permit an inference that the Board was his "employer" as defined under these statutes.  The Board moves to dismiss plaintiff's § 1983 claim on the theory an individual cannot seek relief under § 1983 for a claim that is cognizable under the ADA.  Plaintiff argues in response that he has sufficiently pled that the Board was his "employer" as defined by the applicable statutes.  (Doc. 15).  Plaintiff further contends that he brings a § 1983 claim for violation of his rights under the Equal Protection Clause of the Fourteenth Amendment, which he may pursue independently of his statutory claims.  In reply, the Board contends that plaintiff cannot bring a claim for disability discrimination in violation of the ADA in the guise of an Equal Protection claim under § 1983 and further, plaintiff has not pled sufficient facts to state a claim for violation of his equal protection rights.  (Doc. 22).

### A.  *Whether the Board qualifies as plaintiff's employer*

The Board moves to dismiss plaintiff's claims under the ADA, the FMLA, and the Ohio Civil Rights statute on the ground it is not plaintiff's "employer" as defined under these statutes and the relevant case law.  (Doc. 9 at 5-11).  The Board argues that plaintiff has not pled factual

allegations that show the Board had sufficient control over the performance of his job to qualify as an employer. The Board also contends that the documents submitted in connection with plaintiff's Equal Employment Opportunity Commission (EEOC) charge show the Board was not involved in plaintiff's day-to-day employment. The Board acknowledges that Ohio law gives it some authority over plaintiff's employment; however, the Board argues that it does not follow that "the Board actually controlled the manner and means of [plaintiff's] employment." (*Id.* at 10, citing Ohio Rev. Code §§ 1545.07, 1545.13[2]). Plaintiff argues in response that he has adequately pled that the Board, which has the authority under Ohio law to hire and fire park police officers, terminated his employment. (Doc. 15 at 5-6, citing Ohio Rev. Code § 1545.13(B)). In reply, the Board contends there is no allegation in the complaint that the Board made the termination decision, and the Ohio statutory scheme does not give the Board "*carte blanche* hiring and firing authority." (Doc. 22 at 2-3).

The statutes at issue specify who can be held liable to an employee covered by the statute. The ADA precludes a "covered entity" from discriminating against a qualified individual "on the basis of disability" or from refusing to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." 42 U.S.C. §§ 12111, 12112. The ADA defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5). The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this

---

[2] Ohio Rev. Code §§ 1545, *et seq.*, govern park districts and a park board of commissioner's authority. The statutes vest the park board with the authority to "employ a secretary and such other employees as are necessary in the performance" of its powers and to "designate" law enforcement officers under Ohio Rev. Code § 1545.13.

subchapter." 29 U.S.C. § 2615. The definition of "employer" under the FMLA includes "any public agency" and "any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer." 29 C.F.R. § 825.104(a). "Normally, the legal entity which employs the employee is the employer under the FMLA." *Id*. The Ohio Civil Rights Act defines the term "employer" to include "the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." Ohio Rev. Code § 4112.01(A)(2).

To determine whether a particular defendant is the plaintiff's "employer" in a given case, the Sixth Circuit directs the court to "look to whether the alleged employer exercises control over the manner and means of plaintiff's work." *Onuoha v. Greene County Bd. of Commissioners*, No. 3:15-cv-047, 2015 WL 7820633, at *5 (S.D. Ohio Nov. 12, 2015) (Report and Recommendation), *adopted,* 2015 WL 7871352 (S.D. Ohio Dec. 3, 2015) (citing *Smith v. Grady*, 960 F. Supp. 2d 735 (S.D. Ohio 2013) (citing in turn *Nelson v. Clermont County Veterans' Serv. Comm'n.*, No. 1:11-cv-335, 2012 WL 893877, at *4 (S.D. Ohio Mar. 15, 2012) (citing in turn *Sutherland v. Michigan Dept. of Treas.*, 344 F.3d 603, 611-12 (6th Cir. 2003)). "An employer is one who can direct the day-to-day performance of job duties and has control of hiring, firing, and promotion." *Id*.

Decisions from this district have addressed whether a public entity organized under Ohio law qualifies as an "employer" under various anti-discrimination statutes. In *Nelson*, 2012 WL 893877, the court held that the Clermont County Board of Commissioners did not qualify as an employer of the plaintiff, who worked for the Veterans Services Commission (VSC). The court reasoned that "under Ohio law, the VSC is a separate governmental entity with its own budget," which the Clermont County Board had no authority to revise. *Id.*, at *5 (citations omitted).

7

Further, the plaintiff had not alleged that the Clermont County Board "supervised VSC employees' day to day activities, hired or fired VSC employees, controlled VSC work assignments, issued instructions to the VSC, or conducted any other activities commonly performed by employers," and neither was the Clermont County Board authorized under state law "to do any of these things for VSC employees." *Id.,* at *4 (citing *Satterfield v. Tennessee,* 295 F.3d 611, 617 (6th Cir. 2002) (noting that "the most important factor" in evaluating the employment relationship was "the employer's ability to control job performance and employment opportunities of the aggrieved individual"); *Sanford v. Main Street Baptist Church Manor, Inc.,* 327 F. App'x 587, 594 (6th Cir. 2011)).

In reaching its decision, *Nelson* distinguished the Sixth Circuit's decision in *Sutherland,* 344 F.3d 603, an employment discrimination case brought against several governmental entities and officials in which the Michigan Department of Treasury was held to be the sole employer. The Sixth Circuit in *Sutherland* reached its conclusion on two grounds: first, the Treasury had "the sole authority to appoint, hire, fire and promote eligible employees" and "[t]he other defendants did not have such control and could not be liable for any alleged adverse" employment actions; and second, the Treasury "was the entity with the authority to make the relevant employment decisions and controlled the manner and means of the employees' work. . . ." *Nelson*, 2012 WL 893877, at *7 (quoting *Sutherland*, 344 F.3d at 611-12). The circumstances in *Nelson* were found to be distinguishable because the plaintiff in that case had not pled facts to allow the court to reasonably infer that the Clermont County Board could be liable for the misconduct alleged. *Id.*, at *4

In *Smith v. Grady*, 960 F. Supp. 2d 735, 744 (S.D. Ohio 2013), the district court addressed whether the plaintiff, an alleged "Security Officer" for the Hamilton County Juvenile

Court's Youth Center, had sufficiently alleged that Hamilton County, and more specifically the Hamilton County Board of Commissioners, was the plaintiff's "employer." Recognizing that "Ohio counties are creatures of statute," the court looked to the powers that Ohio law expressly or impliedly conferred on Ohio counties. *Id*. at 745 (citing *Rees v. Olmsted*, 135 F. 296, 299 (6th Cir. 1905); Ohio Rev. Code §§ 305.16, 305.17 (vesting a board of county commissioners with authority to employ such employees as are necessary for the care and custody of property under its jurisdiction and control and to fix the employees' compensation)). As required under Sixth Circuit law, the Court also considered whether the Hamilton County Board exercised "control over the manner and means of plaintiff's work." *Id*. (citing *Nelson*, 2012 WL 893877 at *4) (citing in turn *Sutherland*, 344 F.3d at 611-12). Though the plaintiff in *Smith* did not specifically allege who hired or fired her or controlled her day-to-day employment, she did claim that the then-Superintendent of the Youth Center had placed her on administrative leave. *Id*. The Court found that accepting the alleged facts as true and construing them liberally in plaintiff's favor, it was plausible that plaintiff "fell into the category of security guards who were employed by the board of county commissioners for the care and custody of the court house, jail, and other county buildings. . . ." *Id*. at 747. The *Smith* Court concluded Hamilton County should not be dismissed at the pleading stage on the ground it was not the plaintiff's employer. *Id*.

In accordance with applicable case law and the Ohio statutory scheme, and liberally construing the allegations of the complaint in plaintiff's favor, plaintiff has pled sufficient facts in this matter to permit a finding that the Board was his employer as defined under the applicable statutes. By its plain terms, Ohio Rev. Code § 1545.07 vests a park board of commissioners, "a body politic and corporate" which "may sue and be sued," with the power to hire employees.[3]

---

[3] Section 1545.07 provides that a board of park commissioners has the authority to "employ a secretary and such other employees as are necessary in the performance of the powers conferred in such sections. . . . For the purposes

The employees who may be hired by a park board of commissioners include police officers. *See* Ohio Rev. Code § 1545.13 (referring to park police officers as employees who have been designated as police officers by the Board). An employee whom the board of park commissioners "designates" as a police officer is subject to certain requirements and restrictions which are set forth in Ohio Rev Code § 1545.13, including statutory certification requirements and employment eligibility restrictions. *See* Ohio Rev. Code § 1545.13(B),(C) (restricting the employment eligibility of an employee whom the Board has designated as a police officer if the employee commits a felony or misdemeanor and requiring the suspension or termination of an employee in those circumstances). The statute does not, by its terms, otherwise limit the Board's authority to terminate an employee designated as a park police officer. *Id.*

Thus, under the statutory scheme, the Board has the authority to hire park police officers and the apparent authority to fire park police officers, subject to the above noted restrictions. The power to hire and fire employees is indicative of an employer/employee relationship. *See Onuoha,* 2015 WL 7820633, at *5 ("An employer is one who can direct the day-to-day performance of job duties *and has control of hiring [and] firing. . . .*") (emphasis added); *Sutherland,* 344 F.3d at 611-12 ("the employer's ability to control job performance *and employment opportunities*" of the plaintiff is the most important factor in determining whether there was an employment relationship); *Smith,* 960 F. Supp. 2d at 745 (citing cases that hold the county was not the "responsible employer" for claims brought under the federal anti-discrimination statutes and Ohio law because juvenile court officials "serve during the pleasure

---

of acquiring, planning, developing, protecting, maintaining, or improving lands and facilities thereon under section 1545.11 of the Revised Code, and for other types of assistance which it finds necessary in carrying out its duties under Chapter 1545 of the Revised Code, the board may hire and contract for professional, technical, consulting, and other special services. . . ."

of the judge" under Ohio statutes[4]); *cf. Nelson*, 2012 WL 893877, at *4 (the plaintiff had not

sufficiently pled that a board of county commissioners was the plaintiff's employer where there

was no evidence that the board "*hired or fired* VSC employees" or had other responsibilities

indicative of an employer/employee relationship).

Further, plaintiff has pled sufficient facts to permit a finding that the Board terminated

him. According to the complaint, the Board terminated plaintiff's employment based on

Granville's recommendation that the Board fire plaintiff or force him to resign. (Doc. 1, ¶¶ 23,

24, 27). Plaintiff alleges that on information and belief, the Board terminated him without

investigating a complaint he made to the Board that Granville discriminated against him because

of his disabilities and Granville refused to accommodate his disabilities. (*Id.*, ¶¶ 25, 26, 27).

Plaintiff's allegations give rise to a reasonable inference that the Board, acting in accordance

with its authority as plaintiff's employer under Ohio statutory law, fired plaintiff. Plaintiff's

claims against the Board under the ADA, the FMLA and Ohio law should not be dismissed on

the ground the Board cannot be held liable under these statutes because it was not plaintiff's

employer.

### B. *Whether plaintiff can pursue a claim against the Board under § 1983*

The Board argues that plaintiff's § 1983 claim fails as a matter of law because it is based

on the same factual allegations as his ADA claim. (Doc. 9 at 11). The Board contends that the

ADA forecloses a separate claim under § 1983. *Id.* Plaintiff disputes that he is attempting to

remedy a violation of the ADA under § 1983. (Doc. 15 at 7). Rather, plaintiff states that he

brings a claim under § 1983 for violation of his right to be free from disability discrimination

---

[4] *See, e.g., Lavelle v. Wood Cnty.*, No. 3:09-cv-2998, 2010 WL 2572861, at *2 (N.D. Ohio June 23, 2010) (county was not "the responsible employer" for claims brought under the ADA, ADEA, Title VII and Ohio law); *Burton v. Hamilton Cnty. Juvenile Court*, No. 1:04-cv-00368, 2006 WL 91600, at *4 (S.D. Ohio Dec. 5, 2005) (same for discrimination claim brought under Title VII)).

under the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution. (*Id.*). Plaintiff argues that he is not barred as a matter of law from bringing an

equal protection claim for disability discrimination under § 1983. The Board argues in reply that

while an individual can pursue claims for alleged constitutional violations under § 1983,

plaintiff's § 1983 claim is premised solely on a statutory ADA violation and is thus barred.

(Doc. 22 at 4). The Board further contends that even if plaintiff's claim were construed as a

claim for disability discrimination under the Equal Protection Clause, plaintiff has not stated a

claim for violation of his equal protection rights because he does not allege that the Board took

state action, without a rational basis, that subjected plaintiff to different treatment because of his

disability. (*Id.*).

The Sixth Circuit has "not squarely decided whether plaintiffs can use § 1983 to enforce

the ADA." *Bullington v. Bedford County, Tennessee*, 905 F.3d 467, 471 (6th Cir. 2018). The

Sixth Circuit has held that because the elements of an ADA claim and a claim a disability

discrimination claim under the Equal Protection Clause are different, an individual may pursue

an equal protection claim for disability discrimination under § 1983. *Id.* at 477-78. To prove a

disability discrimination claim under the ADA, a plaintiff must that show: "(1) that [he] was in a

class of persons protected by the ADA; (2) that [he] was otherwise qualified for the position,

with or without reasonable accommodation; (3) that [he] suffered an adverse employment action;

(4) that the employer knew or had reason to know of [his] disability; and (5) that the adverse

employment action occurred under circumstances that raise a reasonable inference of unlawful

discrimination." *Id.* at 477 (citing *Whitfield v. Tenn.*, 639 F.3d 253, 258-59 (6th Cir. 2011)). To

establish a disability discrimination claim under the Equal Protection Clause, a plaintiff must

show "that there was no rational basis for the state action that treated [him] differently because of

[his] disability." *Id.* at 488 (citing *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational")).

Here, plaintiff is not precluded from bringing a disability discrimination claim based on violation of his equal protection rights as a matter of law. Further, plaintiff has adequately pled a claim for violation of his constitutional rights under § 1983. The allegations of the complaint, liberally construed, support a claim that defendants discriminated and retaliated against plaintiff without a rational or valid justification because plaintiff is disabled or because defendants perceived him to be disabled. Plaintiff claims in Count IV of the complaint that "by discriminating and retaliating against Plaintiff, and acting under color of state law, [defendants] violated Plaintiff's federal constitutional rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free of disability discrimination." (Doc. 1, ¶ 56). Because plaintiff's allegations are sufficient to state a claim for violation of his equal protection rights, plaintiff's § 1983 claim against the Board should not be dismissed at this juncture.

## IV. Granville's motion to dismiss (Doc. 10)

Plaintiff brings claims against defendant Granville for disability discrimination and retaliation under the ADA and Ohio Rev. Code 4112.02; a claim for FMLA violations; and a claim under 42 U.S.C. § 1983 for violation of plaintiff's Fourteenth Amendment rights. Granville moves to dismiss the disability discrimination and retaliation claims brought against him in his individual capacity on the ground he is a supervisor who does not qualify as an "employer" subject to suit under the ADA or Ohio Rev. Code § 4112.02(A)(2) as a matter of law. (Doc. 10 at 6-8). Granville moves to dismiss the state law disability discrimination and retaliation claims brought against him in his official capacity on the ground he is an employee of

a political subdivision who has statutory immunity from liability under Ohio Rev. Code. § 2744.03(A)(6), and plaintiff has not alleged facts to show that an exception to statutory immunity applies. (*Id*. at 12-13, citing Ohio Rev. Code § 2744.03(A)(6); *Hauser v. Dayton Police Dep't*, 17 N.E.3d 554, 557 (Ohio 2014)). Granville moves to dismiss the FMLA claim on the ground he is not an "employer" under the statute, which excludes a public agency and its employees from the definition of "employer." (*Id*. at 8-10). Finally, Granville asserts that plaintiff's § 1983 claim should be dismissed because plaintiff cannot bring an ADA claim under § 1983, and plaintiff has not alleged facts to show that Granville can be held individually liable as plaintiff alleges only that Granville's wrongful conduct was the direct result of official customs and policies of MetroParks and the Board. (*Id*. at 10-12).

Plaintiff concedes that he cannot bring a claim against Granville individually under either the FMLA or the ADA. (Doc. 16 at 1, n. 1). Plaintiff argues that he can pursue his claim against Granville "personally" for disability discrimination under Ohio Rev. Code § 4112.02(J), which subjects an employee of a political subdivision to liability for aiding, abetting, compelling or coercing an act which constitutes an unlawful discriminatory practice under § 4112.02. (Doc. 16 at 4-5). Plaintiff also argues that he is not precluded from pursuing a claim under § 1983 for disability discrimination in violation of his equal protection rights, and he has sufficiently alleged an equal protection claim against Granville. (*Id*. at 5-6).

In reply, Granville argues that plaintiff has not alleged sufficient facts to state a plausible claim against him in his individual capacity. (Doc. 21 at 3-8). Granville contends that plaintiff has alleged no facts to show that Granville acted outside the scope of his employment or any other aggravating factors that would implicate Granville in the alleged wrongful conduct and support a claim against him in his individual capacity under Ohio law. (*Id*. at 3). Granville also

14

argues that plaintiff cannot pursue his Ohio claim as a matter of law for two reasons. First, Granville contends that § 4112.02 does not create an express cause of action against individual agents of an employer. (*Id*. at 5, citing *Hauser v. City of Dayton Police Dep't*, 17 N.E.3d 554, 555 (Ohio 2014)). Further, Granville argues that plaintiff cannot pursue a claim against him for aiding and abetting discrimination under § 4112.02(J) because that claim is inconsistent with plaintiff's allegation that Granville is an agent of MetroParks. (*Id*. at 6, citing Doc. 1, ¶ 4). Finally, Granville argues that plaintiff's § 1983 claim fails as a matter of law because plaintiff is simply using § 1983 as a conduit for an ADA claim, and plaintiff has not alleged facts to show that Granville was personally involved in the alleged discrimination and retaliation that caused plaintiff's injury.

### A. Whether Granville can be held liable in his individual capacity under § 4112.02

In his motion to dismiss, Granville construed plaintiff's § 4112.02 claim as brought under § 4112.02(A). (Doc. 10 at 7). Granville argues that he cannot be held individually liable on plaintiff's claim for disability discrimination under Ohio Rev. Code § 4112.02(A) because he is not plaintiff's "employer" as the term is defined for purposes of the statute. (*Id*. at 7-8). Ohio Rev. Code § 4112.01(A)(2) defines "employer" under Ohio Rev. Code Ch. 4112 to include "any person acting directly or indirectly in the interest of an employer." Section 4112.02(A) subjects only "employers" to vicarious liability under § 4112.02(A) and does "not expressly impose liability on individual employees." *Hauser*, 140 Ohio St.3d at 270-73. Thus, an individual employee cannot be held liable for discrimination under that provision. *Id*. at 558.

Plaintiff asserts in his response that he does not claim that Granville is an "employer" under § 4112.02. (Doc. 16 at 4). Instead, plaintiff argues that he has alleged sufficient facts to hold Granville personally liable as a "political subdivision employee" for "personally

participat[ing] in, coerc[ing], and compel[ing]" plaintiff's termination under § 4112.02(J). (Doc. 16 at 4). Subsection (J) makes it unlawful "[f]or *any person* to aid, abet, incite, compel, or coerce" an unlawful discriminatory practice "or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice." Ohio Rev. Code § 4112.02(J) (emphasis added). Section 4112.02(J) thus "holds individual employees liable for their participation in discriminatory practices." *Hauser*, 17 N.E.3d at 558; *see also Gibbs v. Meridian Roofing Corp.*, No. 1:17-cv-245, 2017 WL 6451181, at *6 (S.D. Ohio Dec. 18, 2017) ("Unlike Ohio Revised Code § 4112.02(A), § 4112.02(J) applies to 'persons' and not only 'employers.'"); *Siwik v. Cleveland Clinic Found.*, No. 1:17cv1063, 2019 WL 1040861, at *27 (N.D. Ohio Mar. 5, 2019) ("§ 4112.02(J) does provide for employees . . . to be held liable for aiding and abetting its employer's discriminatory or retaliatory practice"); *cf. Crawford v. Notar*, No. 2015-T-0133, 2016 WL 2869891 (Ohio App. 11th Dist. May 16, 2016) ("Similar to R.C. 4112.02(J) (the aiding-and-abetting provision), the retaliation provision of the statute (R.C. 4112.02(I)) imposes liability on 'any person [who] discriminate[s] in any manner against any other person because that person has opposed any unlawful discriminatory practice.'"); *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 753 (S.D. Ohio 2018) (noting that the Ohio Supreme Court in *Hauser* used § 4112.02(J) as an example of statutory language that imposes individual liability for discrimination)).

In his reply, Granville does not dispute that § 4112.02(J) imposes liability on a "person" as opposed to an "employer." (Doc. 21 at 5-6). However, Granville argues that plaintiff has not stated a plausible claim for relief against him under § 4112.02(J) because the allegations of the complaint do not show that Granville "personally participated in, coerced, and compelled Plaintiff's termination in violation" of § 4112.02(J). (*Id.* at 5). Granville contends that plaintiff

has alleged no facts whatsoever to show that Granville acted in his personal capacity. (*Id*. at 5-6).

Accepting the allegations of the complaint as true, plaintiff has pled sufficient facts to support the imposition of individual liability on Granville for disability discrimination under § 4112.02(J). Plaintiff alleges that he told both the Board and Granville, his direct supervisor, about his disability and requested leave and other accommodations for his disability, including changed supervisory methods. (Doc. 1, ¶ 14). Plaintiff alleges that when he told Granville about his disability, Granville "threatened" plaintiff's job, and refused to discuss accommodating plaintiff's disability and to actually accommodate plaintiff's disability. (*Id*., ¶ 19). Plaintiff further alleges that Granville became "openly hostile" to plaintiff, managed plaintiff more closely after learning of his disability, and undermined plaintiff's job performance by setting higher standards for plaintiff than for other employees, giving plaintiff unnecessary work, and setting unreasonable and arbitrary deadlines for plaintiff. (*Id*., ¶¶ 20-21). In addition, plaintiff claims that Granville prepared "a sham performance review to justify recommending that the Board terminate Plaintiff or force him to resign," and that Granville informed plaintiff he would be terminated during the performance review when he refused to resign. (*Id*., ¶¶ 23, 24). Plaintiff alleges that he informed the Board verbally and in writing that Granville had discriminated against him because of his disability and refused to accommodate his disability. (*Id*., ¶ 25). These allegations, accepted as true, are sufficient to support a finding that Granville "aided, abetted, incited, compelled and/or coerced discriminatory treatment" by plaintiff's employer. *See Woodworth v. Time Warner Cable, Inc.*, No. 1:15-cv-1685, 2015 WL 6742085, at *3 (N.D. Ohio Nov. 2, 2015); *Gibbs*, 2017 WL 6451181, at *6 (allegations that employee "intentionally helped procure Plaintiff's resignation by labeling Plaintiff a liability to the

company, personally encouraging Plaintiff to resign, and informing Plaintiff that his only options were to resign or be fired . . . set forth allegations sufficient to state a claim for aiding and abetting disability discrimination" against the individual employee).

Granville argues in his reply brief that plaintiff's § 4112.02 claim fails for the additional reason that plaintiff has made inconsistent allegations that Granville is an agent of MetroParks, and Granville aided and abetted the alleged discrimination. (Doc. 21 at 6). Granville has not developed this argument. Nor has Granville cited any authority to show that his alleged status as an agent of MetroParks precludes the imposition of individual liability on Granville under § 4112.02(J) for aiding and abetting discrimination. Insofar as Granville suggests that individual liability cannot be imposed on an agent for aiding and abetting his employer under § 4112.02(J), the court in *Siwik* addressed and rejected the same argument, which was premised on the theory the employer could not aid and abet itself. *See Siwik*, 2019 WL 1040861, at \*27. The court explained that the plaintiff before it did not claim that the employer aided and abetted itself in retaliating against him; instead, the plaintiff alleged that the individual employee aided and abetted the employer in its unlawful employment practices. *Id*. (distinguishing *Sampson v. Sisters of Mercy of Willard, Ohio*, No. 3:12-00824, 2015 WL 3953053 (N.D. Ohio June 29, 2015), which held that "a corporate entity cannot aid and abet itself in violations of the Ohio Civil Rights Act"). As in *Siwik*, plaintiff here alleges that the employee, Granville, aided and abetted his alleged employer, the Board, in discriminating against him. Granville may be held liable under § 4112.02(J) if he "aided, abetted, incited, compelled and/or coerced discriminatory treatment" by plaintiff's employer. *See Woodworth*, 2015 WL 6742085, at \*3. Because plaintiff has stated a plausible claim that Granville committed one or more unlawful acts under §

4112.02(J), plaintiff's § 4112.02 claim brought against Granville in his individual capacity should not be dismissed.

### B. Whether Granville can be held liable in his official capacity under § 4112.02

In his motion to dismiss, Granville argues that plaintiff's § 4112.02(A) claim brought against him in his official capacity should be dismissed because Granville is not an "employer" who can be held liable under that provision. (Doc. 10 at 12-13, citing *Hauser,* 17 N.E.3d at 557; *Gibbs*, 2017 WL 6451181, at *5; *Morningstar v. Circleville Fire & EMS Dep't*, 2018 WL 1365842 (S.D. Ohio Mar. 16, 2018)). Granville argues that because he is not an "employer" subject to liability under § 4112.02(A), he has statutory immunity from suit under Ohio Rev. Code § 2744.03(A)(6) and no exemption from immunity applies; i.e., plaintiff has not alleged facts to show that (1) Granville acted manifestly outside the scope of his employment, (2) his acts or omissions were committed with malicious purpose, in bad faith, or in a wanton or reckless manner, or (3) liability is expressly imposed upon him by Ohio Rev. Code § 4112.02(A).

In his response, plaintiff does not dispute that Granville is not an "employer" under § 4112.02 and that Granville is not subject to liability under § 4112.02(A). (Doc. 16 at 4). Rather, plaintiff clarifies that he brings a claim against Granville in his individual capacity under § 4112.02(J), which imposes liability on a "person" who aids or abets a discriminatory practice. (*Id.*). Plaintiff argues that he has alleged sufficient facts to support a claim that "Granville personally participated in, coerced, and compelled Plaintiff's termination" in violation of § 4112.02(J). (*Id.* at 5).

Granville asserts in his reply that he cannot be held liable under § 4112.02 because the statute does not create a cause of action against individual employees and servants of an

employer.[5] (Doc. 21 at 5-6).

For the reasons discussed *supra*, plaintiff has adequately pled a disability discrimination claim against Granville in his individual capacity under § 4112.02(J). However, plaintiff does not allege that he seeks to hold Granville liable in his official capacity for the acts alleged in the complaint under any other provision of § 4112.02. Thus, plaintiff's claim against Granville in his official capacity under § 4112.02 should be dismissed.

### C. Whether plaintiff can pursue a claim against Granville under 42 U.S.C. § 1983

Granville moves to dismiss plaintiff's § 1983 claim on the grounds (1) plaintiff improperly seeks to bring an ADA claim under § 1983, and (2) plaintiff has not alleged sufficient facts to show that Granville's personal actions caused plaintiff's alleged injury. (Doc. 10 at 10-12).

For the same reasons discussed in connection with the § 1983 claim against the Board, plaintiff's § 1983 claim against Granville should not be dismissed at the pleading stage. Plaintiff has adequately alleged that Granville violated his equal protection rights by discriminating and retaliating against him without a valid justification and on the basis of plaintiff's disability. Further, the allegations of the complaint, accepted as true, support a reasonable inference that Granville's actions were a direct cause of the harm plaintiff alleges. *See supra* at 17-18.

---

[5] Granville does not argue in his reply memorandum that he is exempted from immunity by § 4112.02(J), which expressly imposes liability on a "person." This is consistent with *Hauser*, which found that §§ 4112.01(A)(2) and 4112.02(A) "do not expressly impose civil liability on political-subdivision employees so as to exempt them from immunity under R.C. 2744.03(A)(6)(c) [but] [a]n individual political-subdivision employee still faces liability under . . . the aiding-and-abetting provision in R.C. 4112.02(J)." *Hauser*, 17 N.E.3d at 559.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Board's motion to dismiss for failure to state a claim (Doc. 9) be **DENIED**.

2. Granville's motion to dismiss (Doc. 10) be **DENIED** as to plaintiff's claim under § 1983 against Granville and plaintiff's claim against Granville in his individual capacity under Ohio Rev. Code § 4112.02.

3. Granville's motion to dismiss (Doc. 10) be **GRANTED** as to plaintiff's claims against Granville under the ADA and the FMLA and plaintiff's claim against Granville in his official capacity under Ohio Rev. Code § 4112.02.

Date: _7/2/19_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DANIEL BOWER
    Plaintiff,

vs.

METROPARKS OF BUTLER
COUNTY, et al.
    Defendants.

Case No. 1:18-cv-00791

Dlott, J.

Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).